# Appendix   B



# SUPREME COURT

# OF THE

# STATE OF CONNECTICUT

# RECORD

Judicial District of Stamford

## Supreme Court No.  S.C. <u>19032</u>

## <u>STATE OF CONNECTICUT</u>

### v.

## <u>SHEILA DAVALLOO</u>

<u>Defendant's Appeal From the Superior Court.</u>

Hon. Richard F. Comerford, Jr., Judge
Hon. Gary J. White, Judge
Hon. Martin L. Nigro, Judge

## A p p e a r a n c e s :

**For Plaintiff:**

Timothy J. Sugrue,
Senior Assistant State's Attorney

**For Defendant:**

Mark Rademacher,
Assistant Public Defender

| | RECORD<br>SC19032<br>TABLE OF CONTENTS | |
|---|---|---|
| 1. | INFORMATIONS AND DOCKET ENTRIES | 1 |
| 2. | MOTION IN LIMINE TO EXCLUDE TESTIMONY CONCERNING CONFIDENTIAL MARITAL COMMUNICATION DATED MAY 31, 2011 | 9 |
| 3. | STATE'S MOTION IN LIMINE REGARDING THE ADMISSIBILITY OF MARITAL COMMUNICATIONS DATED JUNE 1, 2011 | 23 |
| 4. | MOTION IN LIMINE RE SUBSEQUENT MISCONDUCT EVIDENCE DATED AUGUST 16, 2011 | 24 |
| 5. | MEMORANDUM OF DECISION DATED AUGUST 31, 2011 | 40 |
| 6. | JUDGMENT | 44 |
| 7. | APPEAL | 46 |
| 8. | DOCKETING STATEMENT | 47 |
| 9. | DEFENDANT'S ISSUES | 49 |
| 10. | STATE'S ISSUES | 50 |

**INFORMATION**
JD-CR-71  Rev. 12-03

STATE OF CONNECTICUT
SUPERIOR COURT

DISPOSITION DATE
4-27-12

## TITLE, ALLEGATION AND COUNTS

| STATE OF CONNECTICUT VS. (Name of accused) | G.A. NO. | DOCKET NO. | |
|---|---|---|---|
| Davalloo, Sheila | 1 | FSTCR08165602 | |

ADDRESS
Bedford Hills Correctional Facility, Bedford, N.Y.

The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut charges that:

| TO BE HELD AT (Town) | COURT DATE |
|---|---|
| Stamford | |

| FIRST COUNT - DID COMMIT THE OFFENSE OF | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|
| Murder | 2·16·10 | | X |

| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. |
|---|---|---|
| Stamford | Nov. 8, 2002 | 53a – 54a |

SECOND COUNT - DID COMMIT THE OFFENSE OF

| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. |
|---|---|---|

THIRD COUNT - DID COMMIT THE OFFENSE OF

| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. |
|---|---|---|

SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS

DATE  11/6/07

SIGNED (Deputy Asst. State's Attorney)

## COURT ACTION

| DEFENDANT ADVISED OF RIGHTS BEFORE PLEA | | | | |
|---|---|---|---|---|
| (JUDGE) | (DATE) 12/30/08 | BOND 1 million - 12/30/08 | SURETY | 10% CASH  ELECTION CT JY (Date) |

| ATTORNEY | PUB. DEFENDER | GUARDIAN | BOND CHANGE | SEIZED PROPERTY/INVENTORY NO. #146 6204 44 |
|---|---|---|---|---|

| COUNT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE | NEW PLEA | VERDICT FINDING | FINE | REMIT | ADDITIONAL DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1 | | | 4/4/12  2/10/12 | | Gy | $ | $ | 50 yrs to serve Consecutive to N.Y. case f/r(w) |
| 2 | 1/14 | N | | | | $ | $ | |
| 3 | | D9/S | | | | $ | $ | filed 4/4/13 WAC |

| DATE | OTHER COURT ACTION | JUDGE |
|---|---|---|
| 12/30/08 | PD appointed. Transfer to Part A Defense chargeable with continuance to 1/14/09 for HPC and Interstate Act on Detainers purposes  FILED | Comerford |
| 1/14/09 | Δ waives hearing for probable cause - Waive hearing of Lums form. - Δ Request for written motion continuance granted for 60 days | APR 19 2013  Comerford J. APPELLATE CLERK'S OFFICE |

| RECEIPT NO. | COST  IMP  NCI | BOND INFORMATION  BOND FORFEITED  FORFEITURE VACATED | | FORFEITURE VACATED AND BOND REINSTATED |
|---|---|---|---|---|
| APPLICATION FEE - RECEIPT NO. IF PAID | CIRCLE ONE  W I Q | PROGRAM FEE - RECEIPT NO. IF PAID | CIRCLE ONE  W I Q | PROBATION FEE - RECEIPT NO. IF PAID  CIRCLE ONE  W I Q |
| STATE'S ATTORNEY ON ORIGINAL DISPOSITION  Bennard | REPORTER/MONITOR ON ORIG. DISP.  Franchina | SIGNED (Clerk) | SIGNED (Judge) | SEE BACK OF PAGE 1 |

**INFORMATION**
JD-CR-71  Rev. 12-03

STATE OF CONNECTICUT
**SUPERIOR COURT**

| ARREST WARRANT | | |
|---|---|---|
| G.A. NO. 1 | DATE Nov. 66, 2007 | STATE OF CONNECTICUT  vs Davalloo, Sheila |

TO: Any Proper Officer of the State of Connecticut

By AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to arrest the body of the within-named accused. *("X" all that apply)*

☐ A. Accused is ordered to be brought before a clerk or assistant clerk of the Superior Court.

☐ B. Accused is not entitled to bail.
If A, B or both are checked above, you shall without undue delay bring the arrested person before the clerk or assistant clerk of the Superior Court for the geographical area where the offense is alleged to have been committed, or if the clerk's office is not open, to a community correctional center within said geographical area, or the nearest community correctional center if no such center exists in the geographical area, or to the Correctional Institution, as the case may be.

☐ C. Bail set at _____

☐ D. Conditions of release not determined by court.

EXTRADITION BOUNDARIES ESTABLISHED BY PROSECUTOR

| BY THE COURT | SIGNED (Judge of the Superior Court) | NAME OF JUDGE (Print or type) Nigro |
|---|---|---|

| RETURN ON ARREST WARRANT | | | |
|---|---|---|---|
| G.A. NO. 1 | TOWN OF Stamford | DATE 12/29/08 | STATE OF CONNECTICUT |

Then and there, by virtue of the within and foregoing complaint and warrant, I arrested the body of the within-named accused and read the same in the hearing of said accused; and have said accused here in court for examination.

ATTEST (Officer's signature and Department)  _____ Stamford Police Department (935)

| DATE | OTHER COURT ACTION | JUDGE |
|---|---|---|
| 01/14/09 | Per Defendant motion, time & charge is ruled and charged to Defendant | Comerford, J |
| 2/20/09 | extra 2 days for continuance of 3/16/09 instead of 3/14/09 will be charged to defense | White |
| 5/14/09 | A motion to continuance #3 - granted A canvassed "A" to A's motion to continue case indefinitely A's appearance waived for 6/11/09 @ A's request | Comerford |
| 8/24/09 | Defenses request to continue case to 9/18/09. Granted. Comerford, J. | |
| 11/30/09 | time charged to defense | Comerford |
| 5/27/11 | Demand for written Notice of Alibi Defense Mot in limine re admiss. of marital comm. filed by State | |
| 6/1/11 | Mot in limine to exclude Testimony Concerning Confidential Comm filed | |
| 6/30/11 | Motion in limine to exclude Marital Communication SA motion granted, A motion denied | Comerford |

JD-CR-71 (back of page 1) Rev. 12-03

☐ SEE ADDITIONAL PAGE(S)

| JD-CR-71 LP REV. 7-05 | | STATE OF CONNECTICUT SUPERIOR COURT | | |
|---|---|---|---|---|
| ORIGINAL INFORMATION: **YES** | COURT DATE: **12/30/2008** **GA01 - STAMFORD** | ③ | DISPOSITION DATE: | DOCKET NO.: **FST -CR08-0165602-T** |

The undersigned Prosecuting Authority of the Superior Court of the State of Connecticut charges that

**DAVALLOO SHEILA**

DOB: 05/11/1969

1992 COMMERCE ST, YORKTOWN HEIGHTS, NY 10598

Did commit the offenses recited below:

Count: 1 MURDER    Type/Class: F/A   At: STAMFORD
On or About: 11/08/2002        In Violation Of CGS/PA No: 53a-54a

| SEE OTHER SHEETS FOR ADDITIONAL COUNTS | DATE | SIGNED (PROSECUTING AUTHORITY) |
|---|---|---|
| | | |

**COURT ACTION**

| | |
|---|---|
| 8/18/11 | Motions in limine - Re: Subsequent Misconduct    Comerford Evidence - argument heard, decision to be rendered on next court date, 8/24/11 at 2PM |
| 8/22/11 | Motion for Order of Disclosure of Alibi Defense |
| 9/1/11 | A MOTION IN LIMINE TO EXCLUDE MISCONDUCT    COMERFORD EVIDENCE DENIED |
| 9/16/11 | 54-56d    WHITE |
| 11/21/11 | 54-56d hearing    White |

State calls Jo-Ann Holmes- DMHAS-Norwich Forensic Evaluations
Defendant found competent by Court - Case Restored
to docket
A motion to represent herself
Defendant Knowingly + voluntarily decided to represent
herself - Defendant canvassed
PD Butler appt as standby council.

11/21/11 - Jury Selection tentatively scheduled for 1/4/2012 Comerford
Evidence 1/15/2012
(12/5/11) Defendant has 2 weeks to disclose any alibi defense.

Defense will stipulate to authentic transcripts from
NY trial - a court reporter does not need to be called to

④

11/21/11    Defense stipulate to authentic Verizon
                Cell phone records                                            Comerford

            seized property to be reviewed by standby counsel
            PD Butler.

            ~~Def. to~~ Defendant may keep practice book
                        for trial

12/01/11   Court set a date of 12/8/11 for A to ~~argue~~ motion to
11/28/11   Suppress.

12/01/11   State filed two Motions in Court. Motion in Limine to Bar Certain
11/28/11   Hearsay Testimony and Motion in Limine. dated 11/30/11 and 11/28

12/1/11    Atty Barry filed motion to Suppress Statement dated 9/15/11

12/6/2011  File ordered transfered from courtrm 4A to 4B
                                                                        Comerford
            Request to appoint DNA expert-denied
            Motion in Limine to Bar Certain Hearsay Testimony
            & Brief in Support Thurd -no action
            Motion in Limine - court to consider State's Brief & sprmt.
              utterance arg. ; cont. to 12/13/11
                                          2013
            Motion to Suppress Statements
            12:25 Officer Holt, Stamford Police Dept sworn in
            12:35, Officer Holt excused
              A may cross-examine Officer Holt on 12/20/11
              Statement from A's witness B. Asher-Thomas to be taken
                by 12/20/11
              Court to reconvene @ 2pm
            2:20 Court reconvenes ; 911 tape marked State's Ex 1 for
                Hearing

2/10/12-2/14/12  A found Guilty after Jury Trial
            8/13/12 App for Waiver of Fees & Costs/Appt of Pub. Def granted
            8/24/12 copies mailed to PD's office
                                                                    Comerford

12/13/11 - Suppression motion to go over to          Comerford, J
12:30 pm          12/20/11

- Defense he would like to call Gary Riley
  PD's office will help as friend of court
  to help make Gary Riley available for
  defense

- State would like to have 911 tape
  re-examined - already marked exhibit #1
  State may take tape for further
  examination

State Calls Sgt. Richard Caldwell, Stamford PD

   States exhibit one turned over to Inspector
   Mecozzi at 1:10 pm on 12/13/11

12/20/11   11:45 Court opens                    Comerford, J.
           11:50 Officer Holt takes the stand; remains under oath
              Cross-examination by Δ
           12:07 Officer Holt excused
           12:10 Court recess - 10 minutes
           12:29 Court reconvenes
           12:45 Ruling Motion to Suppress Statements - Denied
              Continue to totaltime 1/4/12

12/28/11   Jury selection to start 1/4/2012
           Evidence to begin 1/24/12

2/30/11   Decision/Ruling on motion to Suppress filed
           in clerks office

(6)

| Date | OTHER COURT ACTION | JUDGE |
|---|---|---|
| 1/4/12 | Jury Selection | Comerford |
| 1/5/12 | Jury Selection | Comerford |
| 1/6/12 | Jury Selection | Comerford |
| 1/10/12 | Jury Selection | Comerford |
| 1/11/12 | Jury Selection | Comerford |
| 1/12/12 | Jury Selection | Comerford |
| 1/13/12 | Jury Selection | Comerford |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| PROSECUTOR | REPORTER/MONITOR | SIGNED: CLERK | SIGNED: JUDGE |
|---|---|---|---|
| Bernardi | | Teri Nesley | Comerford |

| Date | OTHER COURT ACTION | JUDGE |
|---|---|---|
| 1/18/12 | Media hearing | Comerford |
| | Courts exhibit #2 marked email | |
| | Courts exhibit #3 printout from CT Judicial Website | |
| | media can cover trial | |
| | - Defendant waives her appearance | |
| | in media set up conference scheduled | |
| | for 1/19/12 1/20/12 | |
| | - Juror Francis Casale excused | |
| 1-20-12 | Jury selection | Comerford |
| 1-24-12 | Jury Trial Day One | Comerford |
| 1-25-12 | Jury Trial Day two | Comerford |
| 1-26-12 | Jury Trial Day three | Comerford |
| 1-27-12 | Jury Trial Day four | Comerford |
| | Def motion for mistrial | |
| | Motion denied as to both issues | |
| 1-31-12 | Jury trial Day five | Comerford |
| 2-1-12 | Jury trial Day six | Comerford |
| 2-2-12 | Jury trial Day seven | Comerford |
| 2-3-12 | Jury trial Day eight | Comerford |
| | - State rests | |
| | - Defense calls first witness | |

| PROSECUTOR | REPORTER/MONITOR | SIGNED: CLERK | SIGNED: JUDGE |
|---|---|---|---|
| | | | |

| Date | OTHER COURT ACTION | JUDGE |
|------|--------------------|-------|
| 2-6-12 | Jury Trial Day eight (Charge conference) | Comerford |
|  | A motion for mistrial oral     Motion denied. |  |
|  | Defendants Request to charge filed in Court. |  |
|  |  |  |
| 2-7-12 | Jury trial day nine | Comerford |
|  | Defense rests |  |
|  | Δ motion for judgement of acquittal                      denied |  |
|  | Δ ordered transported for 1:30pm |  |
|  |  |  |
| 2-8-12 | Jury trial day ten | Comerford |
|  | Δ is not requesting lesser included offense |  |
|  |  |  |
| 2-9-12 | Jury trial day eleven | Comerford |
|  | Charge |  |
|  | Df wishes to have PD Butler appt to her Case to represent her. from here on out. Df canvassed |  |
|  | Attorney Butler appt. |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| PROSECUTOR | REPORTER/MONITOR | SIGNED: CLERK | SIGNED: JUDGE |
|------------|------------------|---------------|---------------|
|  |  |  |  |

NO.  CR08-165602T                    SUPERIOR COURT

STATE OF CONNECTICUT          J/D OF STAMFORD-NORWALK

V                                               AT STAMFORD

SHEILA DAVALOO                      MAY 31, 2011


## MOTION IN LIMINE TO EXCLUDE TESTIMONY CONCERNING CONFIDENTIAL MARITAL COMMUNICATIONS


The defendant, by her counsel, moves the Court pursuant to Practice Book §§ 42-15, relevant evidentiary principles, Amendments Five, Six, Eight, and Fourteen to the United States Constitution, and Article I, Sections 8 and 9, of the Connecticut Constitution, to preclude the prosecution from offering privileged and confidential marital communications between the defendant Sheila Davalloo and her husband Paul Christos. It is anticipated that the State will seek to offer the testimony of the defendant's husband Paul Christos( See State's Trial Brief Regarding Marital communications).More specifically, it is anticipated that the State will seek to offer Mr. Christos' testimony regarding the content of conversations between Christos and his wife Sheila Davalloo that were communicated privately, during the course

1

of their marriage. The defendant seeks to suppress and/or exclude these private communications between Davalloo and Christos due to their confidential and privileged nature. At all relevant times prior to the death of Anna Lisa Raymundo and afterward the defendant and Paul Christos were married until their divorce was granted by a New York Court on September 3, 2004.

## II.  STATEMENT OF LAW

Our nation and our state have recognized and adhered to the principle that the trust and confidences shared in marital relationships should not be divulged to the public by force of law.  In applying this principle, our law has delineated two forms of privileges against the exposure of spousal communications: the privilege against adverse spousal testimony, and the privilege of confidential communications.

The common law rules of testimonial privilege recognize two distinct marital privileges.  The adverse spousal testimony privilege permits an individual to refuse to testify in a criminal proceeding against her or his spouse.  This privilege rests on the notion that a husband and wife should be able to trust each other completely, and that marriage is a sanctuary.  The privilege is described as being broadly aimed at protecting marital harmony.

2

The second marital privilege, the confidential marital communications privilege is narrower than the adverse spousal testimony privilege and seeks only to protect the intimacy of private marital communications, but it can be invoked by either spouse to prevent the revelation of such communications. United States v. Premises, 71 F.3d 1067, 1070 (2nd Cir. 1995).

The marital privilege against adverse spousal testimony has been recognized by our legislature and codified in Connecticut General Statutes' 54-84a.  This statute gives the witness spouse the option of testifying against an accused spouse.  State v. Saia, 172 Conn. 37, 43, 372 A.2d. 144(1976).  This common law marital privilege against adverse spousal testimony is distinct from the confidential-communication privilege that requires a communication, made in confidence, from one spouse to another during a period of marriage.  See C. Tait & J. LaPlante, Connecticut Evidence ' 12.6 (2nd Ed. 1988).

The confidential communications rule that protects private communications made from one spouse to the other is entirely distinct from the aforementioned privilege against adverse spousal testimony and it may be claimed by the accused spouse to preclude from introduction into evidence any such private spousal communications. Wolfe v. United States,

3

291 U.S. &, 14, 54 Ct. 279 (1934); <u>Blau v. United States</u>, 340 U.S. 332, 333, 71 S. Ct. 301 (1951); <u>Pereira v. United States</u>, 347 U.S. 1, 6, 74 S. Ct. 358 (1954); U.S. v. Estes, 793 F.2d 465, 466 (2nd Cir. 1986); <u>U.S. v. Premises</u>, 71 F.3d 1067, 1069-70 (2nd Cir. 1995).  Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged. <u>Wolfe</u>, 291 U.S. at 14.  It is the rule that marital communications are presumptively confidential. Blau, 340 U.S. at 333. <u>State v Christian</u>, 267 Conn. 710(2004). The normal evidentiary rule applicable to confidential marital communications precludes the admission of testimony regarding spousal communications made in confidence. <u>Estes</u>, 793 F.2d at 466.

The privilege protecting confidential marital communications operates much like other confidentiality rules such as the attorney/client privilege, and as such it allows either spouse to compel the non-disclosure of the substance of confidential communications between the two.  <u>Premises, 71</u> F.3d at 1069.  The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.

4

Wolfe, 291 U.S. at 14. The marriage's later deterioration does not destroy the marital communication privilege. Therefore, a confidential communication made during a valid marriage, if privileged when made, will continue to be privileged even though the marriage has been terminated by divorce, annulment, or death. Wharton's Criminal Evidence, 15th Ed., 11:43.

Although prior to <u>State v Christian</u>, the Connecticut Supreme Court had never explicitly held that confidential communications between husband and wife are privileged, its early case of <u>State v. Hoyt</u>, 47 Conn. 518 (1880), strongly suggested that the <u>Hoyt</u> court felt there was such a privilege. <u>State v. Littlejohn</u>, 199 'Conn. 631, 649, 508 A.2d 1376 (1986). Furthermore, the case of Spitz's Appeal, 56 Conn. 184, 14 A. 776 (1887), clearly hypothesizes such a privilege. <u>Littlejohn</u>, 199 Conn. At 649. This spousal confidential communications privilege commends itself to judicial acceptance and admission of such statements may be deemed erroneous. <u>Id.</u> At 649-650.

In <u>State v Christian</u>, the Connecticut Supreme Court ruled that the marital privilege "commends itself to judicial acceptance and we expressly accept that privilege as a fixture of our common law". <u>Christian</u>, Supra. In <u>Christian</u>, after a fatal automobile accident the defendant husband made

5

admissions to his wife that the trial court admitted into evidence over the defense's assertion of the marital privilege. On appeal the defense argued that the trial court improperly allowed confidential communications between the defendant and his spouse. In <u>Christian</u>, the Supreme Court's analysis found that the defendant had argued that the marital communications privilege is alive and well in Connecticut. The court noted that:

> "Specifically, the defendant claims that, although neither the courts nor the legislature explicitly have recognized such a privilege, "the case law and the statutory history . show that this privilege is well recognized." The defendant therefore contends that the trial court improperly precluded the defendant from asserting the privilege concerning the communication, which had been made in confidence and while the couple was living together and in a legally valid marital relationship. In response, the state urges us not to recognize the marital communications privilege because "the cost of recognizing the common law . privilege exceeds its dubious benefits." Rather, the state contends, the legislature has enacted "a reasonable compromise" by codifying the separate and distinct adverse marital testimonial privilege in General Statutes § 54-84a.6 The state further argues that, even if we recognize the marital communications privilege, it is inapplicable in the present case because the defendant's previous statements to Vorih, Ruggiero and Ford rendered his communication to his wife not confidential.

6

(15)

We agree with the defendant." Therefore it is clear that Connecticut recognizes this important privilege. .

As reaffirmed in <u>Christian</u> the principles underlying the marital communications privilege are well recognized.   "The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.  Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."   (Citations omitted.) <u>Wolfle v. United States</u>, 291 U.S. 7, 14, 54 S.Ct. 279, 78 L.Ed. 617 (1934).   The marital communications privilege protects "information privately disclosed between husband and wife in the confidence of the marital relationship-once described . as 'the best solace of human existence.' "   <u>Trammel v. United States</u>, supra, 445 U.S. at 51, 100 S.Ct. 906, quoting <u>Stein v. Bowman</u>, 38 U.S. (13 Pet.) 209, 223, 10 L.Ed. 129 (1839).   The privilege has been described as "almost sacrosanct<u>." Johnson v. United States</u>, 616 A.2d 1216, 1224

7

*16*

(D.C.App.1992), cert. denied, 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172

(1993).   "[T]he primary purpose of the confidential marital communication

privilege is to foster marital relationships by encouraging confidential

communication between spouses." Curran v. Pasek, 886 P.2d 272, 276

(Wyo.1994).   The privilege "permits[s] a husband and wife to communicate

freely with one another without fear that their communications will be used

against them at some future date."   G. Sodaro & P. Wilson, "Spousal

Privileges," in 2 Testimonial Privileges (S. Stone & R. Taylor eds., 2d Ed.

1995) § 5.07, p. 5-11.   "We encourage married people to confide in each

other by protecting their statements from later scrutiny in court."  United

States v. Lea, 249 F.3d 632, 641 (7th Cir.2001).

It therefore is apparent that the purposes underlying the marital

communications privilege asserted by the defendant are quite different from

those supporting the separate and distinct privilege against adverse spousal

testimony relied upon by the state.   "The [adverse spousal testimony]

privilege looks forward with reference to the particular marriage at hand:

the privilege is meant to protect against the impact of the testimony on the

marriage.   The marital communications privilege in a sense is broader and

more abstract:  it exists to insure that spouses generally, prior to any

8

involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law."   United States v. Byrd, 750 F.2d 585, 590 (7th Cir.1984); see also State v. Adamson, 72 Ohio St.3d 431, 433, 650 N.E.2d 875 (1995) ("[s]pousal privilege and spousal competency are distinct legal concepts which interrelate and provide two different levels of protection for communications between spouses").   We therefore are not persuaded by the state's assertion that the privilege against adverse spousal testimony, codified at § 54-84a, alone is sufficient to protect the interests of open communication in the marital relationship.

The court's analysis must determine if the communications were made during their marriage; and (2) whether those communications were confidential.   In the present case, State v Davalloo, it is clear that the parties were married at all times when the sought after communications were made, as conceded in the State's trial brief.   In Christian, the trial court determined that the marital communications privilege, if it existed, was inapplicable because "at the time the statement was made, but most importantly now, at the time of trial," the defendant's marriage irretrievably had broken down. The trial court ruled this way despite the fact that the

9

parties had not yet divorced.    The state contended that the trial court's decision was proper, because the defendant's marriage was "beyond repair" both at the time the statement was made and at the time of trial. The defendant claimed that the trial court improperly refused to apply the privilege.   Specifically, Christian claimed that the trial court's focus was imprecise because the privilege attached at the time that the confidential statement was made, and if made during the marriage, the privilege survives the dissolution of the marriage.   The Supreme Court in <u>Christain</u> stated that "We agree with the defendant."

Moreover, the marital communications privilege survives divorce. 'Once the marital communications privilege has attached…..it continues to survive even after the marriage has ended.   See <u>Pereira v. United States</u>, 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954) ("divorce . does not terminate the privilege for confidential marital communications"); …(privilege explicitly provide that it continues after death or divorce);   C. Tait, supra, § 5.35.4, p. 330 (marital communications privilege continues after divorce and death of spouse).   In other words, the privilege focuses on the marital relationship between the spouses at the time that the communication was made, and not at the time of trial." <u>Christian,</u>  Supra.

After determining that the communications privilege survived an acrimonious marriage the <u>Christian</u> Court then concluded that they communications were confidential despite their supposed communications to third parties. The court stated: " We next focus our analysis on the question of whether the communications were confidential.   The state contends that the trial court's denial of the defendant's motion in limine can be affirmed, nevertheless, because the marital communications were not confidential.   Specifically, the state relies on the defendant's previous, similar statements to Vorih, Ruggerio and Ford. We disagree.

The court also concluded that ;" the determination of the second factor, that is, whether a communication was confidential, depends on the facts of the particular case." The presumption is that the communications are confidential and the State bears the burden of overcoming this presumption. "   It is axiomatic that the marital communications privilege protects only those communications that are confidential.   <u>Wolfle v. United States</u>, supra, 291 U.S. at 14, 54 S.Ct. 279.   "Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private."   <u>Pereira v. United</u>

11

_20_

States, supra, 347 U.S. at 6, 74 S.Ct. 358;  see also State v. Smith, 384 A.2d 687,

691 (Me.1978) (following "the near universal rule, that all marital

communications are presumed to be confidential, and the party seeking to

introduce the evidence must overcome the presumption" [citations

omitted]).   The state, therefore, as the party seeking to introduce the marital

communication into evidence, bears the burden of overcoming the

presumption of confidentiality by proving that the communication between

the defendant and his wife was not confidential.   See Blau v. United States,

340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951) ("[M]arital

communications are presumptively confidential.")

The presumption has been held to have been overcome in some

instances, noted the Christian Court, "the party offering the marital

communication usually can overcome the presumption of confidentiality

through evidence that the communication had been made in the presence of

a third party.   See, e.g., United States v. Taylor, 92 F.3d 1313, 1331-32 (2d

Cir.1996) (evidence that third person had been in room with defendant and

spouse overcame presumption of confidentiality), cert. denied, 519 U.S.

1093, 117 S.Ct. 771, 136 L.Ed.2d 717 (1997); State v. Levi, supra, 67 Haw. at

250, 686 P.2d 9 (defendant's statements to wife in presence of third parties

12

not confidential); <u>State v. McMorrow</u>, supra, 314 N.W.2d at 288-89 (marital communications not confidential when made while couple in car with third person).

Ultimately, despite holding that disclosure to third parties did not automatically dissolve the privilege in <u>Christian</u>, the Court found the testimony harmless and noted its cumulative nature.

In the instant case, the defendant requests that the communications he made in confidence to his wife Sheila Davaloo be precluded from admission into evidence pursuant to the spousal confidential communication privilege. This privilege presumptively attaches to any communications related by the defendant to his wife during he period of their marriage.  <u>Blau</u>, 340 U.S. at 333; <u>Pereira</u>, 347 U.S. at 6.  The defendant Sheila Davaloo and Paul Christos were married long before the communications in question took place. Communications between the defendant Sheila Davaloo and her husband were made during the time of their marriage should be recognized as marital communications that are presumptively confidential and consequently inadmissible.

13

## III.   CONCLUSION

For the foregoing reasons as well as those presented before the Court at a full hearing on the matter, the defendant requests that the Court suppress confidential marital communications.

THE DEFENDANT

BY: _____

BARRY BUTLER
PUBLIC DEFENDER

O R D E R

After having heard upon the foregoing, it is hereby ordered: GRANTED/DENIED.

BY THE COURT

_____

JUDGE  /  CLERK

14

FST 165202                                  **SUPERIOR COURT**

**STATE OF CONNECTICUT**                    **JUDICIAL DISTRICT OF STAMFORD**
                                            **NORWALK AT STAMFORD**

**V.**

**SHEILA DAVALLOO**                         **JUNE 1, 2011**


STATE'S MOTION IN LIMINE

REGARDING THE ADMISSIBILITY

OF MARITAL COMMUNICATIONS


The State of Connecticut moves this Honorable Court in limine to rule prior to

trial that certain statements made by the defendant to her husband, Paul Christos, are admissible

during the State's case in chief, and in support thereof relies upon the State's brief regarding

marital communications dated January 15, 20011.



Respectfully submitted,

The State of Connecticut

By Supervisory Assistant State's Attorney

James M. Bernardi

NO.  CR08-165602T                    SUPERIOR COURT

STATE OF CONNECTICUT           J/D OF STAMFORD-NORWALK

V                                    AT STAMFORD

SHEILA DAVALOO                       AUGUST 16, 2011


### MOTION IN LIMINE RE SUBSEQUENT MISCONDUCT EVIDENCE


### ARGUMENT

### THE COURT SHOULD NOT ADMIT THE DEFENDANT'S OUT OF STATE SUBSEQUENT MISCONDUCT


The defendant, by her counsel, moves the Court pursuant to Practice Book §§ 42-

15, relevant evidentiary principles, Amendments Five, Six, Eight, and Fourteen to the

United States Constitution, and Article I, Sections 8 and 9, of the Connecticut

Constitution, to preclude the prosecution from offering evidence of the defendant's out of

state 2004 conviction for attempted murder. The homicide for which the defendant is now

being prosecuted occurred on November 8, 2002 in Stamford, CT. The misconduct the

state seeks to introduce did not occur until four and a half months later on March 23, 2003

in the state of New York. Although the state in its memorandum dated January 15, 2011

refers to this as a related uncharged act, the defense argues that it is unrelated and

certainly charged and prosecuted by the State of New York as defendant was convicted of

Attempted Murder. Other alleged acts of so called misconduct such as alleged acts of

eavesdropping or watching her lover are not charged because they are not crimes, but

1

their admission would be highly prejudicial nonetheless. The nature of the evidence, as noted by the state, and made explicit by EVIDENCE CODE § 4-5(b) and the *Commentary* thereto, "is contingent on [the proponent] satisfying the relevancy standards and balancing test set forth in Sections 4-1 and 4-3, respectively."

The misconduct will be argued as admissible under several exceptions to the rule: as "direct proof" of the defendant's identity, common scheme, intent, motive, knowledge, corroboration, and consciousness of guilt, malice and lack of mistake or accident. Admission will be error for several reasons: first, the evidence is not relevant under any of these "exceptions"; second, any relevance and probative value that does exist will be outweighed by the high degree of prejudice. This state, admittedly, has no eyewitness to this crime and has little direct evidence of the defendant's guilt in this murder case (aside from the DNA).   (The defendant recognizes that there is appears to be a large amount of circumstantial evidence). The lack of, or at best negligible, relevancy and high prejudice in the admission of these past acts of subsequent misconduct/crime evidence  require the court to preclude their admission.

The defense objects to all the misconduct evidence as extremely inflammatory material that would cause severe prejudice. Moreover, the absence of overwhelming direct evidence of provable facts in this case make comparisons between the misconduct(New York Attempted Murder) and this crime(Stamford Murder) difficult-to-impossible and therefore unprovable. This insufficiency also makes it probable that the evidence would be used to fill in blanks in the state's case, which is nothing more than using it for the illegal purpose of showing a propensity to commit crime. The defendant also points out that the subsequent misconduct and the crimes were different in important aspects, such as how the victim was assaulted and where that happened.

2

**Law on the Admissibility of Prior Misconduct**

It should be noted that this case presents the novel issue of admissibility of subsequent as well as claimed prior misconduct yet case law on prior misconduct is useful.  The well-known general rule is that "evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. ... [,] [n]or can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Case citations and internal quotation marks omitted) *State v. Merriam*, 264 Conn. 617, 660-61 (2003); see also EVIDENCE CODE § 4-5 (a). "'It is objectionable, not because it has no appreciable probative value, but because it has too much' ([WIGMORE ON EVIDENCE] § 194); meaning, of course, that its appeal is not confined to the intellect or to the precise issue.'" *State v. Gilligan*, 95 Conn. at 530-31. The rule guards against "its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged." *State v. Figueroa*, 235 Conn. 145, 161 (1995). Such evidence is admissible under restricted conditions where the crimes are "'so connected with the principal crime by circumstance, motive, design, or innate peculiarity that the commission of the collateral crime tends directly to prove the commission of the principal crime.'" *State v. Kulmac*, 230 Conn. 43, 60-61 (1994). See also EVIDENCE CODE § 4-5(b). Admissibility is determined under a two-pronged test: "First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect." *State v. Merriam,* 264 Conn. 661; see EVIDENCE CODE §4-5 Commentary, & §§4-1, 4-3., State v Randolph, 284 Conn. 328, AT 340 (2007).

**a. The standard of appellate review should the trial court rule against the defendant concerning possible abuse of discretion**. The trial court's decision is reviewed under the abuse of discretion standard. The standard does not simply confer

3

"leeway in decision-making," but requires a decision "in conformity with the spirit of the law and in a manner to sub serve and not to impede or defeat the ends of substantial justice." (Int. quot. marks omitted) *State v. Feliciano*, 256 Conn. 429, 453-54 (2001) (re misconduct evidence). A decision contrary to the rule and its spirit is an abuse. On the prejudice prong, this Court has explained that "the underlying policy of protecting the accused against unfair prejudice.... ought not to evaporate through the interstices of the classification" (Int. quot. marks omitted.) *Id.* The issue is one of "balancing the actual relevancy of the other crimes" against "the degree to which the jury will probably be roused." *Id.* A case will be reversed where the abuse is "manifest or when an injustice appears." *State v. Meehan*, 260 Conn. 372, 393 (2002). The defendant must also show that the error was harmful in the context of the entire trial. *State v. Sawyer*, 279 Conn. 333, 357 (2006). Wherefore the defendant asserts that admission would prejudicial error.

### b. The "more liberal" standard of admissibility for sex offense cases does not apply.

The state asserts that courts apply a more liberal standard of admissibility to sex offense cases under the common scheme exception to the rule. There are two matters here. First, the more liberal standard applies to the common scheme exception only and to no other. It does not apply to the identity, intent, motive or any other exception. *see State v. Sawyer*, 279 Conn. 349-50 (does not apply to identity exception). Second, the more liberal standard had been applied only where the crime charged was a sex offense. *See e.g., Merriam*, at 669 ("in sex crime cases generally, and in child molestation cases in particular"); *State v. Kulmac*, 230 Conn. at 62. However, State v Snelgrove, 288 Conn. 742(2008) and State v Johnson, 289 Conn. 437(2008) appear to plow new ground in loosening this rule, but only in cases where sexual deviance and sexual compulsivity was

4

a motivating factor in the crimes. Johnson was a serial killer who raped his victims before killing them. Snelgove derived sexual arousement and gratification through making his victims helpless and degrading them. The other misconduct in <u>Snelgrove</u> also referred to his own statements in his other misconduct sentencing in New Jersey where he admitted unusual sexual compulsions and driven behavior to render women helpless by strangulating or hitting them and undressing and posing them in sexual positions. While <u>Snelgrove</u> and <u>Johnson</u> stand on the outermost perimeter of this rule that sexual conduct allows a more liberal standard of admissibility even where sex offenses are not charged, no such analogy or comparisons can be made with this case. The state in its memoranda almost admits as much ("this case does not squarely fall within the parameters of the more relaxed standard regarding aberrant sexual misconduct, the defendant's conduct borders on compulsive sexual misconduct").The state makes an attempt at trying to tie in alleged irrationality and perceived compulsivity as a substitute for evidence of sexual deviant conduct. (See state's memoranda dated January 15TH, 2011, page 10-11).

Neither the crime nor the misconduct in this case was a sex offense. The misconduct was against her lawfully wedded husband and was not a sexual assault or sexual in any way shape or form and no sexual assault or intercourse was claimed in any of the events.  While the state may claim its "belief" that it was "sexually motivated," its best facts cannot not prove sexual motivation much less sexual assault, intercourse or even an attempt.  Additionally, there are no fantasy's being enacted, paraphillias performed or any sexual acts contemplated, much less carried out in some plan or common scheme with either the victim in this case or the New York case. If having an illicit affair now qualifies for sexually deviant behavior, history is replete with everyday deviants of all stripes and political affiliations. This is a leap the State of Connecticut cannot make.  Moreover, the fact that the more liberal standard has never been applied

previously to state cases where sexual assault has not been charged means that the EVIDENCE CODE § 4-5 and its Commentary precludes an extension of the rule from "sex crime cases" to "sexually motivated crimes." *State v. Sawyer*, 279 Conn. 333 n.1; see *Id.* at 370-74 (Borden, J., dis. & conc.)**,** but see Snelgrove and Johnson Id.  State v Randolph, supra, indicates that evidence of uncharged misconduct can be admissible in non-sex cases to show a common scheme or plan" only if it supports a permissive inference that both crimes were related to an overall goal in the defendant's mind" citing 1 E. Imwrinkelried, 323, p. 125

**c. Several bases of admissibility: Error in one requires reversal of the case**.

Because the possibility exists that the same misconduct evidence might be admitted under several exceptions to the rule, the issue arises whether an error in the admissibility of any one of the exceptions would require reversal of the case or whether reversal requires that all or even most of the exceptions be erroneous. The defendant contends the former is the correct rule. First, as is obvious, the use of evidence for the wrong purpose is error. If, for example, the evidence was inadmissible to prove "identity" but admissible to prove "knowledge," the error would not be cured by the fact that the same evidence was admitted under both theories. A jury cannot be permitted to use evidence in an illegal manner. *See* 2 WIGMORE ON EVIDENCE (Chadbourn rev. 1979) § 300, p.237; 1 E. Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE (Rev. Ed. 1999) § 3.01. The Supreme Court and the Appellate court have noted the importance of admissibility for different purposes under different exceptions. *See e.g.*, *State v. Meehan*, 260 Conn. at 391-92 (trial court rejected common scheme theory but accepted intent); *State v. Tate*, 85 Conn. App. 365, 382-383 (2004) (noting the trial court's care in excluding other purposes/exceptions). Indeed, the misuse of the evidence on any one of the exceptions would skew the outcome of the case not only by enticing the jury to infer the defendant's identity from evidence

6

that was inadmissible for that reason, but also by encouraging them to find identity based

a belief that the defendant had an "evil disposition" or a "criminal propensity." is

reversible error. *See State v. Sawyer*, 279 Conn. 379 (Borden, dis.and conc.).

### Law on the Identity exception

The first, or "relevancy," prong of the test for this exception requires that "the

methods used be sufficiently unique to warrant a reasonable inference that the

person who performed one misdeed also did the other." (Int. quot. marks

omitted.) *State v. Figueroa*, 235 Conn. at 163; citing *State v. Sierra*, supra, 213 Conn.

422, 430 (1990). The standard is not that "the similarities between the incidents

outweigh the dissimilarities and that there are no particularly distinctive

dissimilarities." *State v. Murrell*, 7 Conn. App. 75, 81 (1986). The facts of both must

be "'so nearly identical in method as to earmark them as the handiwork of the

accused . . . much more is demanded than the mere repeated commission of

crimes of the same class, The device used must be so unusual and distinctive as to

be like a signature.'" (Emp. added; int. quot. marks omitted.) *Figueroa*, at 163,

*quoting* MCCORMICK ON EVIDENCE, (2d Ed. 1972) §190, p.449; *see also* 1 MCCORMICK

ON EVIDENCE (4th Ed. 1992), §190, p.801 (same). "'There should [be no] significant

differences in the context and modus operandi of the crimes.'" *Merriam*, 264

Conn. 665.

7

**This evidence is not relevant to identity**

The evidence will be insufficient under the exception. It will not show that the defendant acted in a signature-like, unique or even consistent manner that would allow the inference that this crime was her "handiwork." Any list compiled by the state in an attempt to show similarities will be short and insufficient. The state claims that both victims are members of a class of two: those intimate with the defendant or her lover. Conspicuously absent from the claim are any real similarities at all. The husband was at one time her lover but Anna Lisa Raymundo was not. Nelson Sessler was supposedly her new lover. Nelsen Sessler was neither a victim nor a target. Anna Lisa Raymundo worked at Purdue but Paul Christos did not. One incident took place in Stamford the other in an entirely different state (New York).The similarities are to be compared victim to victim and not ancillary to non victims...

While both victims were "known to the defendant," this point is true only in a superficial sense. She knew her husband intimately well but she knew Anna Lisa Raymundo barley at all. There is much dissimilarity, and few similarities. Moreover, this point, at its best, is anything but a distinguishing factor. That an assailant knew his victim before the attack is "far from unique or distinctive." *State v. Sawyer*, 279 Conn. at 347.

Moreover, there is nothing unusual or distinctive about stabbing a victim to cause or attempt to cause death, as shown unfortunately by many recent cases. See e.g., *State v. Brunetti*, 279 Conn. 39, 44 (2006); *State v. Cancel*, 275 Conn. 1, 6 (2005); *State v. Swinton*, 268 Conn. 786; *State v. Smith*, 262 Conn. 453, 456 (2003); *State v. King*, 249 Conn. 645, 654 (1999); *State v. Ali*, 92 Conn. App. 427, 431 (2005).

**1.** The probative value of the evidence will NOT outweigh the prejudice.

Given that this court finds any identity relevance, the defendant claims that its probative value will be low. As described above, the similarities and parallels were

8

neither striking nor distinct, and it is difficult to discern a "signature" in any of this. Regardless of any case law relied on or curative instructions given, the defendant asserts that the highly inflammatory prejudice is in surmountable. That is, the prejudice is so great that probative value cannot overcome it under any fair and balanced weighing of the same.

### COMMON PLAN OR SCHEME

The differences between the common scheme and course of criminal activity labels are important to note. Indeed, this exception has been employed under several labels, or as the court in *State v. Murrell*, 7 Conn. App. 83-84, put it, "woven of several separate but related strands." As previously noted, a strand not at issue here is the one applied to sexual assault cases. The state claims it applies because it believes this was " sexually aberrant misconduct and a compulsive crime." However, neither the express words of the EVIDENCE CODE, or the common law that it encompasses supports such as interpretation. This strand has been applied only where the crime charged has been sexual assault or risk of injury with an underlying sexual crime, and the misconduct has been a sexual offense. See *Murrell*, 85; *e.g.*, *Merriam*, 264 Conn. 656-65; *Kulmac*, 230 Conn. 59-63. But see Johnson and Snelgrove Id. which are clearly distinguishable from this case. Here, there was no sexual offense or sexual degradation. Obsessive sex, sexual intercourse or sexual contact and aberrant sexual behavior is not part of the equation.

If this Court rejects the defendant's legal claim, she asserts that the sexual-assault sexual deviance requirements are not met. As argued *supra*, the evidence showed the misconduct and crime was (1) Subsequent in time; (2) insufficiently similar; and (3) not committed on similar victims. *See Merriam,* 264 Conn. at 662. Moreover, it is specious to apply the more liberal standard here where the crime and misconduct did not involve any sexual assault or attempts or crimes on child victims. *Id.* at 669-70. Even in Johnson

9

the defendant raped the victims before he murdered them and Snelgrove admitted to sexual deviant arousals and a long standing sexual deviancy from his New Jersey P.S.I. Any evidence of sexual relations in the present case involves an affair between a witness at best, and the defendant and not either victim in the New York case or the Stamford homicide, and nothing unusual or untoward is claimed. It is simply a fact of human behavior throughout history that individuals have affairs. The fact that some of us are in stable faithful marriages or relationships where cheating does not take place is of no moment when considering if the "affair" in this case is a result of sexually deviant or "aberrant sexual misconduct, where the defendant's conduct borders on compulsive sexual misconduct"

   **a. The non-sexual assault standard**. Of the remaining *Murrell* strands, the one closest to the states concerns acts of misconduct and the crime as being part of the defendant's singular plan. Here, the misconduct supposedly "culminated in the murder of Anna Lisa Raymundo. While *Murrell* separates this into two strands—one where the misconduct and crime is part of an "ongoing" plan, and the other where the misconduct is not ongoing but is part of an overall predetermined plan," *id.*, 84-85—the key to both is that there is a plan at the beginning of the misconduct that contemplates the specific goal. Ongoing plans: *State v. Carrione*, 188 Conn. 681, 690-93 (1981) (larceny of investors included the ongoing reinvestment of the interest earned); *State v. Nardini*, 187 Conn. 518-19 (solicited others to burn the same building); Non-ongoing plans: *State v. Shindell*, 199 Conn. 128, 134n.5 (1985) (re: an arson of 2 buildings: misconduct must be "coupled with other evidence to show that Def had a plan ... to destroy these buildings in order to collect insurance proceed" (emp. added)). The crux of this case is that the defendant in 2002 did not have, and could not have had, a plan to kill Anna Lisa Raymundo so that the

following year, almost five months later she could attempt to kill her husband in 2003. The plan or scheme put forward by the state is nothing more than a claim that because she committed misconduct by eavesdropping and following and eventually stabbed her husband she must have been responsible for the homicide of Raymundo four and a half months earlier, which is the illegality of convicting the defendant by showing a propensity to commit crime.

**b. This was not a "true plan"** The issue may arise as to whether or not there is a distinction in the common scheme exception between a "true plan" and a "spurious" one. See _State v. Merriam_, 264 Conn. 664 n.39. "'[I]n a true plan case, ... the prosecutor may prove any uncharged crime by the defendant which shows that the defendant in fact and in mind formed a plan including the charged and uncharged crimes as stages in the plan's execution. ... Both crimes must be inspired by the same impulse or purpose. Both crimes must be steps toward the accomplishment of the same final goal. .... [T]he prosecution must show that the plan included the specific crime the defendant is now charged with.'" _Id._, 681-83 (Katz, J., dis.), _quoting_ 1 Imwinkelried, § 3:22. In a "spurious plan," the court allows a "series of similar acts ... on the theory that a pattern or systematic course of conduct is sufficient to establish a plan." _Id._ It is really a "plan-to-commit-a-series-of-similar-crimes theory" that is not appropriate. The case law in non-sexual assault cases, supra, follows this distinction. It should be applied here. None of this is a "true plan" or a plan of any acceptable sort that included the specific goal of Ms. Raymundo's homicide.

11

## MOTIVE AND INTENT

  **All motive evidence is irrelevant**. Moreover, the entire claim about motive is that this one motive was the basis for two unconnected crimes is too far afield, having to span nearly four and one half months. Acceptable motives covering several crimes in the case law have included similar crimes or similar crime victims. *See e.g.*, *State v. Feliciano*, 256 Conn. at 453 (larceny one month prior to robbery; both motivated by Def's need to support a drug habit); *State v. James*, 211 Conn. 555, 577-78 (1989) (Def made a sexual advance to same child three months before crime; showed he was attracted to her). *See e.g.*, *United States v. Thomas*, 74 F.3d 701, 713-714 (6th Cir., 1996) Last, the motive in this case is no less than the proscribed "suggest [ion of] the defendant's bad character or a propensity for criminal behavior." *State v. Merriam*, 264 Conn. 661. The state argues that the defendant's motive for killing Anna Lisa Raymundo was the elimination of obstacles to her affair with Nelson Sessler or as the state argues …to eliminate her rival for the affections of Nelson Sessler. The state's theory is speculative at best and it attempts to link the New York case and ignores the obvious alternative to attempting to murder her husband four months later such as separation and divorce. It goes without saying that any taboo associated with divorce has long since evaporated in this country. Additionally, the defendant has previously been divorced. The state cites *State v Stenner*, 281 Conn, 742(2007) for the proposition that the motive exception allows two uncharged robberies to be considered as motive for murder. That case is factually different in many important distinguishing aspects such as the two robberies involved robbery of bank trucks where the victim of the murder participated in both robberies with the defendant and subsequently was believed to be cooperating with investigators. If misconduct

evidence cannot suggest propensity to commit crime, the desire to commit crime cannot be a proper motive. The state cannot escape the rule by circular reasoning.

## INTENT

**Not Relevant**. Two main areas of the application of case law make intent relevant. First where a defendant has committed prior crimes against the same victim of the present crime, *State v. Jacobowitz,* 194 Conn. 408, 414-15 (1984)*; State v. Erhardt,* 90 Conn. App. 853, 859-60 (2005); and second, where the victims of the misconduct and crime are different but the form of the intent is elaborate or unusual; *State v. Nunes*, 260 Conn. 649, 686-87 (2002) (police officer gave victims date-rape drug). Neither situation applies here, leaving this as a plain "transplanting" of the intent from the unrelated misconduct to the crime for no particular reason other than it happened before, which of course is the illegal usage of the evidence as proof of propensity to commit crimes. *See State v. Meehan*, 260 Conn. at 394. In addition, intent is even more subject to a strict remoteness application than motive because it exists only at the time of the crime.

State v Randolph, 284 Conn .328(2007) seemingly attempts to clarify once and for all the many variations on admissibility of prior misconduct, although in Randolph, the Connecticut Supreme Court ultimately reversed the defendant's conviction ruling that the trial court improperly allowed evidence of prior misconduct. In sex crimes, evidence of uncharged sexual misconduct offered "to establish that the defendant had a common scheme or plan to engage in sex crimes, that evidence is evaluated pursuant to a liberal standard" State v Sawyer, 279 Conn 331,332 n. 1, (2006). In cases that do not involve sex crimes a more stringent standard is applied. Randolph Id.

Randolph identifies two categories of cases applying the common scheme or plan exceptions. First are the true common scheme or plan cases where "the nature of the uncharged crimes combined with other evidence give rise to a permissive inference that an overall plan existed in the defendant's mind and the crimes  were executed in furtherance of that plan" Randolph Id.

A second categories of cases consist of "signature" crimes where separate and discrete criminal acts are involved yet evidence exhibits a "modis operandi, logo or signature, which considered with other factors such as proximity of time and place of commission", allow inferences that  there was an overall plan or common scheme. Randolph Id. In signature cases, modis operandi suggests that since the defendant acted in similar and unusual or distinctive manner previously, it is more likely that he, rather than someone else did the act...and identifies the defendant.  Randolph Id. It is "not enough to show mere similarity between the charged and uncharged crimes" 1 E. Winkelried, supra at 124. A series of similar acts do not establish the existence of a true plan Id ,pp. 124-125. Therefore under the signature test a true plan that existed in the defendant's mind based solely on similarities, the state has to prove the existence of the signature or logo or modis operandi and support the inference that both crimes are related to the overall plan in the defendant's mind. Id. p.125. No argument can be supported by evidence that the attempted murder of her husband in New York in 2003 and the homicide of Anna Lisa Raymundo in Connecticut in 2002 demonstrate a signature or logo or modis operandi.  Randolph suggests that proximity of time and place are the most decisive factors to be considered. The time, place, and method employed rule out any signature in the present case. Therefore the State's only hope of offering this misconduct evidence lies in the first category of cases noted by I .E. Winkelried and cited in Randolph. In this first category of cases to establish that a

14

common scheme or plan existed, the 'admissibility does not depend on the degree of similarity shared by the charged and uncharged crimes, but, rather, on the extent to which it is probative of the existence of an overall plan in the defendant's mind " <u>Randolph</u> Id. As stated previously, the State lacks any real proof of a true plan that existed in the defendant's mind prior to the homicide in Stamford in early November of 2002 that also contemplated and planned the Attempted Murder of her husband in late March of 2003. The state can resort to speculation and conjecture as to why the defendant supposedly acted as she did but in the final analysis, it is mere possibilities and nothing more.

**FINALLY,**

The second prong on the admissibility of misconduct evidence, that the probative value of the misconduct evidence outweigh its prejudicial effect, cannot be overcome. The defense submits that the misconduct evidence at issue is so inflammatory and so highly prejudicial that it simply cannot be outweighed by probative value.

**WHEREFORE**, the defendant respectfully request that this Honorable Court to preclude the state from offering the above mentioned misconduct evidence of the attempted murder of her husband and grant this motion in Limine.

THE DEFENDANT

BY:

BARRY BUTLER
PUBLIC DEFENDER

15

## ORDER

After having heard upon the foregoing, it is hereby ordered:
**GRANTED/DENIED.**

BY THE COURT

_____

JUDGE  / CLERK

This is to certify that a copy of the
Foregoing has been given to the
State's Attorney for the Judicial
District of Stamford-Norwalk on this date

BARRY BUTLER
PUBLIC DEFENDER

16

FST 165602                                    : SUPERIOR COURT

STATE OF CONNECTICUT                          : JUDICIAL DISTRICT OF
                                                STAMFORD/NORWALK

                V.                            : AT STAMFORD

SHEILA  DAVALLO                               : AUGUST 31, 2011

## MEMORANDUM OF DECISION

     The state by way of proffer seeks to introduce at trial certain acts and misconduct of the accused, the principle act being the defendant's attempted killing of her husband. Other misconduct surrounding said attempt and the death of Ana Lisa Raymundo are also the subject of the proffer. The defendant by motion in limine seeks to preclude the facts and circumstances surrounding the attempted murder of her husband and subsequent out of state conviction therefore.

     For purposes of the proffer and in limine request the court, upon stipulation of the parties, assumes the facts set forth in the states brief are capable of proof.

     The principles of law applicable to and dispositive of the admissibility issue are found in *State* v. *Randolph*, 284 Conn. 328 (2007).  Clearly under *Randolph* the evidence which the state seeks to offer is indicative of a common scheme or plan by the defendant to eliminate a rival (Raymundo) and an impediment (Christos).

As our Supreme Court has said, citing the Inkelried Treatise :

    "Evidence of such a plan is relevant to the charged crime because it bears on the defendant's motive and hence the doing of a criminal act, the identity of the actor and his intention, where any of these are in issue." *Randolph,* supra at 342.

     While in non-sex cases evidence of other acts as misconduct is not admissible to suggest that the defendant is of bad character or possesses a propensity to commit criminal behavior, our Supreme Court recently stated:

(41)

> ". . . evidence of crimes so connected with the principal crime by circumstance, motive, design or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible.

Indeed, the court goes on to say that:

> "The rules of policy have no application whatsoever to evidence of any crime (and presumably misconduct) which directly tends to prove that the accused is guilty of the specific offense for which he is on trial." *State* v. *Randolph*, supra at 340.

In order to be admissible, the evidence offered must be relevant and material to the exception or exceptions claimed under Sec. 4-5(b) of the Connecticut Code of Evidence and its value must outweigh its prejudicial effect. A plan, which bears on motive and thus intent and identity, is not only probative of the matters in issue but would also logically tend to assist the trier in weighing these issues.

The second prong of the test for admission of other acts evidence is that the probative value of the evidence outweighs its prejudicial effect. *Randolph*, supra at 340, quoting *State* v. *Mackenzie-Adams,* 281 Conn. 486, 521-22 (2007). At Section 4-3 our Code of Evidence states that:

> "relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, or surprise, confusion of the issues, or misleading the jury, or by considerations of waste of time or needless presentation of cumulative evidence."

The Commentary to that Section lays out the guidelines to the court's analysis and recapitulates the common law on the topic. That Commentary states that:

> "All evidence adverse to a party is inherently prejudicial because it is damaging to that party's case. Citations omitted. For exclusion, however, the prejudice must be "unfair" in the sense that it "unduly arouses the jury's emotions of prejudice, sympathy or hostility"; *State* v. *Wilson*, 180 Conn. 481, 490 (1980); or "tends to have some adverse effect upon the party against whom the evidence is offered beyond tending to prove the fact or issue that justified its admission into evidence." *State* v. *Graham*, 200 Conn. 9, 12 (1986), quoting *United States*

2

v. *Figueroa*, 618 F. 2d 934, 943 (2nd Cir. 1980).

Another factor to be considered is how necessary the evidence is to the State's case. See *State* v. *Licari*, 115 Conn. App. 633 (2009), and *State* v. *Tucker*, 181 Conn. 406 (1980). In both those cases the State's case lacked witnesses to the actual crime and the misconduct evidence was critical to the issue of intent.

In the case before the Court, the evidence is critical and does not unduly arouses the jury's emotions of prejudice, sympathy or hostility. The defendant's attempt to murder her husband is not gruesome or heinous. The fact that she engaged in an affair with a co-worker is a common place bordering on pedestrian. Deceptive manipulation of a husband in such a situation is normally attendant to such an affair. The degree of manipulation is unusual, but to the extent that it is, it is extremely relevant to motive common scheme, identity and intent. Its probative value clearly outweighs any minimal prejudice. While the evidence is adverse to the defendant's interest it is not prejudicial to the degree of exclusion.

For the same reasons, the evidence does not unduly tend to have some adverse effect beyond proving the facts or issues which justified its admission. The violent acts (the crime charged is more violent in its commission and more lethal in result) are directed solely at a class of two (intimate partners of the love triangle). There is no allegation that tends to show that any violence was directed at anyone beyond that small, limited class. Therefore, the evidence would not show a general propensity to violence. A logical and reasonable inference is that this specific emotion of the defendant provoked the two assaults, not out of bad character and propensity to violence, but rather, out of antipathy and hostility to a discrete class of two individuals. A limiting instruction to the jury should suffice to ensure that the evidence does

3

(43)

not stray onto a prohibited "propensity" path.

For the reasons described above the Court finds that the other acts evidence referred to in the States' proffer are highly relevant to show motive, identify, intent, common scheme, lack of accident or mistake or self defense, completion of story, and in all probability corroboration of crucial prosecution testimony.  It does so in a highly unusual case where the proffered evidence resembles misconduct testimony in sex cases.  In those cases the defendant is driven by a motive which is aberrant and compulsive.  While a sex crime is not charged in this matter, the aberrant compulsivity of the defendant's conduct makes the admission of the evidence that much more critical in an otherwise circumstantial case where there is no witness to the crime.

For the same reasons, the evidence is not unduly prejudicial.  The motive of the defendant precludes any rational argument that she is violent towards those not in the limited class of two and therefore is unlikely to violate the policy against bad character and propensity evidence.  It is that policy which provides the rationale for the exclusion of otherwise relevant evidence of misconduct.

In short, the court is persuaded by the presentation and analysis of the law in the well reasoned state's brief in support of the proffer. The law and analysis therein contained are incorporated herein and made a part of this memorandum. The facts proffered by the state will be permitted at time of trial subject only to other objection as may be deemed appropriate by counsel.


BY THE COURT


COMERFORD, J.        9|1|11

4

filed in court 9|1|2011

original

(44)

## State of Connecticut

Docket #: FSTCR080165602-T    *

                    *

State of Connecticut         *       Superior Court

                    *       Judicial District

      v.                 *       Stamford/Norwalk

                    *       At Stamford

Sheila Davalloo            *       April 17, 2013

_____ *

Present: Hon. Richard Comerford

### Judgment

On December 29, 2008 the defendant Sheila Davalloo was arrested on the charge of Murder in violation of C.G.S. § 53a-54a. The defendant was arraigned in the Stamford Superior Court before the Honorable Judge Richard Comerford. A public defender was appointed and the bond was set at 1 million dollars.

On January 14, 2009 the defendant waived a probable cause hearing and pled not guilty.

On September 16, 2011 the Honorable Judge White ordered a competency exam pursuant to C.G.S. §54-56d.

On November 21, 2011 the defendant was found competent by Judge White and she knowingly and voluntarily decided to represent herself after being canvassed.

On January 4, 2012 jury selection began before Judge Comerford.

On January 20, 2012 the jury trial began before Judge Comerford.

On February 10, 2012 the jury delivered a verdict of guilty.

FILED

APR 1 9 2013

APPELLATE CLERK'S OFFICE

(45)

On April 27, 2012 the defendant was sentenced by Judge Comerford to **50 years to serve, consecutive to New York case.**

Monica Everest

*Mon Everest*

Assistant Clerk

Sentencing Judge: Richard Comerford

Standby Defense Counsel:  Barry Butler (defendant represented herself pro se)

State's Attorney:   James Bernardi

**APPEAL - CRIMINAL**

JD-SC-29   Rev. 12-09
P.B., §§ 3-8, 62-7, 62-8, 63-3, 63-4
C.G.S. §§ 51-197f, 52-470

(Page 1 of 2)

See Instructions on Back/page 2

[X] To Supreme Court     [ ] To Appellate Court

**SC 19032**

| Name of case | |
|---|---|
| State of Connecticut v. Sheila Davalloo | |

Classification

[X] Appeal   [ ] Cross appeal   [ ] Joint appeal   [ ] Amended appeal   [ ] Stipulation for reservation   [ ] Corrected/amended appeal form   Other (Specify) [ ]

**Trial Court History**

Tried to
[X] Court   [ ] Jury   [ ] Magistrate

Trial court location
**123 Hoyt Street, Stamford, CT**

Trial court judges being appealed
**Comerford**

List all trial court docket numbers, including all location prefixes

All other trial court judge(s) who were involved with the case
**White**

**FST-CR08-0165602**

Judgment for
[X] State of Connecticut   [ ] Defendant

| Judgment date of decision being appealed | Date of issuance of notice on any order on any motion which would render judgment ineffective | Date for filing appeal extended to |
|---|---|---|
| 4/27/12 | | 9/2/12 |

Case type
[ ] Infraction   [ ] Juvenile   [X] Felony/Misdemeanor
[ ] Other (Specify)

**Appeal**

Appeal filed by
[ ] State of Connecticut   [X] Defendant   [ ] Other

From (the action which constitutes the final judgment):   **judgment of conviction**

**(CGS 53a-54a)**

AUG 2 9 2012

SUPERIOR COURT GEOGRAPHICAL AREA 1

If this appeal is taken by the State of Connecticut, give name of Judge granting permission to appeal and date of permission

If to the Supreme Court, the statutory basis for the appeal (Connecticut General Statutes section 51-199)
**Conn. Gen. Stat. 51-199(b)(3)**

| By (Signature of attorney or self-represented party) | Telephone number | Fax number | Juris number (If applicable) |
|---|---|---|---|
| ▶ Adele V. Patterson | 203-230-3357 | 203-230-3361 | 401722 |

**Appearance**

| Type name and address of person signing above (This is your appearance; see Practice Book section 62-8) | E-mail address |
|---|---|
| Office of Chief Public Defender, 2911 Dixwell Ave, 4th Fl, Hamden, CT 06518 | adele.patterson@jud.ct.gov |

"X" one if applicable
[ ] Counsel or self-represented party who files this appeal will be deemed to have appeared **in addition to** counsel of record who appeared in the trial court under Practice Book section 62-8.
[X] Under Practice Book section § 3-8, counsel or self-represented party who files this appeal is appearing **in place of**:

| Name of counsel or self-represented party | Juris number (If applicable) |
|---|---|
| Barry Butler   Sheila Davalloo | 401785 |

**Certification (Practice Book section 63-3)**

I certify that a copy of this appeal was mailed or delivered to all counsel and self-represented parties of record as required by Practice Book section 62-7 on:   8/27/12

Signed (Individual counsel/self-represented party)
▶ Adele V. Patterson

* Attach a list with the name, telephone number and fax number of each counsel and self-represented party and the address where the copy was mailed or delivered.

---

**To Be Completed By Trial Court Clerk**

[ ] Entry Fee Paid   [ ] No Fees Required   [X] Fees, Costs, and Security waived by Judge (enter judge's name below)

| Judge | Date waived |
|---|---|
| Comerford | 8/13/2012 |

| Signed (Clerk of trial court) | Date |
|---|---|
| Mary Daly | 8/31/2012 |

The clerk of the original trial court, if different from this court, was notified on _____ that this appeal was filed.

A copy of this endorsed appeal was provided to the Office of the Chief State's Attorney, Appellate Bureau, on   8/31/12

For Appellate Clerk's Office Use Only

State of Connecticut
Page Docket 07/31/2012
Payfile: 1224492-1
Docket: CR08016560
Receipt Nbr: 001
Amount: $0.00
List Total: 001

**Documents to be given to the Appellate Clerk with the endorsed Appeal form**

The following documents must be filed with the Appellate Clerk when filing the endorsed appeal form; Practice Book section 63-4:
1. Preliminary Statement of the Issues
2. Preliminary Designation of Pleadings
3. Court Reporter's Acknowledgment/Certification re transcript
4. Docketing Statement
5. Constitutionality Notice (if applicable)
6. Sealing Order form, if any

**Certification**

I certify that a copy of the endorsed appeal and all documents to be given to the Appellate Clerk with the endorsed Appeal form were mailed or delivered to all counsel and self-represented parties of record* as required by Practice Book section 63-3 on:   9/5/12

Signed (Individual counsel or self-represented party)
▶ Adele V. Patterson

* Attach a list with the name, telephone number and fax number of each counsel and self-represented party and the address at which the copy was mailed or delivered.

(41)

(CR08-0165602)
A.C._____

STATE OF CONNECTICUT                APPELLATE COURT

v.                                  STATE OF CONNECTICUT

SHEILA DAVALLOO          Sept 5   , 2012

## DOCKETING STATEMENT

      Pursuant to Practice Book §63-4(a)(4), the defendant-appellant submits the following information:

      Parties:

           James Bernardi (trial prosecutor)
           Assistant State's Attorney
           Juris No. 102850
           Office of the State's Attorney
           123 Hoyt Street
           Stamford, CT 06905
           Tel. (203) 965-5215
           Fax (203) 965-5791

           Susan Marks (appellee counsel)
           Supervisory Assistant State's Attorney
           Juris No. 401795
           Office of Chief State's Attorney
           300 Corporate Place
           Rocky Hill, CT  06067
           Tel. (860) 258-5807
           Fax (860) 258-5828

           Sheila Davalloo (defendant-appellant)
           Inmate # 04G0449
           Bedford Hills Correctional Facility
           247 Harris Road
           Bedford Hills, NY 10507

2012 SEP 7 PM 3 49
231 CAPITOL AVENUE
HARTFORD CT 06106
CLERK'S OFFICE
APPELLATE COURT
STATE OF CONNECTICUT


RECORD COPY

Adele V. Patterson (appellate counsel)
Senior Assistant Public Defender
Juris No. 401722
Office of Chief Public Defender
2911 Dixwell Ave, 4th Floor
Hamden, CT 06518
Tel. (203) 230-3357
Fax  (203) 230-3361

Barry Butler (trial counsel)
Public Defender
Juris No. 401785
Office of the Public Defender
123 Hoyt Street
Stamford, CT 06905
Tel. (203) 965-5245
Fax (203) 965-5795

(ii)     None known or reasonably ascertainable, except parties to the appeal, trial

and appellate counsel for the state and the defendant and judges of record.

(iii)    There were exhibits in the trial court.

(iv)    The defendant is incarcerated.


_____
Adele V. Patterson
Senior Assistant Public Defender
Juris No. 401722
Office of Chief Public Defender
2911 Dixwell Ave, 4th Floor
Hamden, CT  06518
Tel. (203) 230-3357
FAX  (203) 230-3361

## STATEMENT OF THE ISSUES

Arg. 1: Are Davalloo's Conversations with Her Husband While They Are

Married Privileged Martial Communications that the State Cannot

Use at Her Trial?


Arg. 2: Is Davalloo's Misconduct Concerning Her Plan to Surveil the

Victim and Her Assault of Her Husband Admissible to Prove

That She Murdered the Victim?


Arg. 3: Did Davalloo Waive Her Right to Counsel?

FST-CR08-0165602-T; S.C.

| STATE OF CONNECTICUT | : | SUPREME COURT |
|---|---|---|
| V. | : | STATE OF CONNECTICUT |
| SHEILA DAVALLOO | : | SEPTEMBER 12, 2012 |

### STATE OF CONNECTICUT-APPELLEE'S PRELIMINARY STATEMENT OF ISSUES INTENDED FOR PRESENTATION ON APPEAL

Pursuant to Practice Book §63-4(a)(1), the State of Connecticut-appellee intends to present any or all of the following issues to the extent they are applicable to those issues raised by the appellant:

**1.      Alternative grounds upon which the judgment may be affirmed:**

a.  Whether any seizure of the defendant, if not supported by probable cause, was supported by suspicion amounting to less than probable cause and was lawful under applicable state and federal constitutional principles, or was not a seizure at all;

b.  Whether any statements of the defendant, or other evidence, were properly admitted into evidence because the defendant was lawfully in police custody, on grounds amounting to less than probable cause, or because the defendant was not in custody at all;

c.  Whether any statements or evidence were admissible under exceptions to the exclusionary rule including, but not limited to, the doctrines of consent, inevitable discovery, independent source, plain view, and search incident to arrest;

d.  Whether any evidence admitted in error could have been admitted on another, proper ground;

e.  Whether any identification of the defendant, if found to be unnecessarily suggestive, was nonetheless reliable under the circumstances of the case;

FILED

SEP 1 3 2012

*51*

f.  Whether any search upheld under a "good faith" exception to the exclusionary rule was supported by probable cause under the totality of the circumstances;

g.  Any other alternative ground for affirmance of the judgment of conviction which, upon full review of the record and transcript of proceedings is apparent, or which becomes apparent upon any amendment of the defendant's preliminary statement of issues or upon the filing of the defendant's brief.

**2.     Adverse rulings or decisions of the trial court, for consideration on appeal in the event that the defendant is awarded a new trial:**

a.  Whether suppression of any of the state's evidence was erroneous;

b.  Whether any ruling on the admissibility of the state's evidence was erroneous;

c.  Any other adverse ruling or decision which, upon full review of the record and transcript of proceedings, should be considered in the event that the defendant is awarded a new trial.

**3.     Claims that a new trial rather than a directed judgment should be ordered if the judgment is reversed:**

a.  Whether, if reversible error is found, the defendant is entitled to relief other than a judgment of acquittal, including, but not limited to, a new trial, remand, or dismissal;

b.  Any remedy which, upon full review of the record and transcript of proceedings is apparent, or  which  becomes apparent upon the filing of the defendant's brief.

57

Respectfully submitted,

STATE OF CONNECTICUT-APPELLEE

By: _____

SUSAN C. MARKS
Supervisory Assistant State's Attorney
Office of the Chief State's Attorney
Appellate Bureau
300 Corporate Place
Rocky Hill, CT  06067
Telephone (860) 258-5807
Facsimile (860) 258-5828
JURIS NO. 401795

## CERTIFICATION

The undersigned hereby certifies that the foregoing motion complies with

Practice Book §§ 66-2 and 66-3.  It is further certified, pursuant to Practice Book § 62-7,

that a copy of this motion was mailed to Adele V. Patterson, Assistant Public Defender,

Office of the Chief Public Defender, 2911 Dixwell Avenue, 4th Floor, Hamden, CT

06518, Tel: (203) 230-3357, Fax: (203) 230-3361, on September 12, 2012.

_____

SUSAN C. MARKS
Supervisory Assistant State's Attorney

S.C.19032

STATE OF CONNECTICUT                    SUPREME COURT

v.                                       STATE OF CONNECTICUT

SHEILA DAVALLOO                          OCTOBER ⎵⎵ , 2013

<u>**CERTIFICATION**</u>

Pursuant to Conn. Prac. Bk. §62-7 the undersigned certifies that the attached record was mailed first class postage prepaid this 16th day of October 2013, to: Hon. Richard F. Comerford, Jr., c/o Chief Clerk, Superior Court, 123 Hoyt Street, Stamford, CT 06905; Timothy J. Sugrue, Senior Assistant State's Attorney, Juris No. 401858, Office of Chief State's Attorney, 300 Corporate Place, Rocky Hill, CT 06067, Tel. (860) 258-5807, Fax (860) 258-5828.

MARK RADEMACHER
ASSISTANT PUBLIC DEFENDER
JURIS NO. 416157
OFFICE OF CHIEF PUBLIC DEFENDER
2911 DIXWELL AVE, 4TH FLOOR
HAMDEN, CONNECTICUT 06518
TEL. (203) 230-3357
FAX (203) 230-3361